**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| NECILDA DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:09-cv-114-WTL-DML |
| | ) | |
| COVANCE CENTRAL LABORATORY SERVICES LP, | ) ) | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Motion for Summary Judgment,
Vacating Final Pretrial Conference and Jury Trial,
and Issuing Final Judgment**

For the reasons explained in this Entry, the defendant's unopposed motion for summary judgment (dkt 41) must be **granted.**

**I. Background**

As used in this Entry, "Davis" refers to the plaintiff, Necilda Davis, and "Covance" refers to the defendant, Covance Central Laboratory Services LP.

Davis's employment with Covance was terminated on June 3, 2008. She alleges that she was discriminated against by Covance on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Covance seeks resolution of Davis's claim through the entry of summary judgment.

**II. Motion for Summary Judgment**

**A. Summary Judgment Standard**

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FED.R.CIV.P.** Rule 56(c). A fact

is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney,* 526 F.3d at 1104 (internal citations omitted). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Id.* (quotation omitted).

Because Davis is proceeding without counsel, the notice required by *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982), and by Local Rule 56.1 was issued. Through this notice, Davis was notified of the nature of the defendant's motion, of the proper manner in which to respond and of the consequences of failing to respond. She has not responded to the motion for summary judgment.

Because Davis has not responded to the defendant's motion for summary judgment, the well-supported factual assertions on which that motion is based are accepted as true for the purpose of resolving the motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994).

### B. Undisputed Facts

As a result of Davis' failure to oppose the motion for summary judgment and the operation of Local Rule 56.1, the court resolves the motion for summary judgment on the basis of the evidence submitted by the defendant. *See Koszola v. Board of Education v. City of Chicago,* 385 F.3d 1104, 1108-09 (7th Cir. 2004). The facts, for this purpose, therefore, are the following:

Covance is a leading supplier of integrated drug development services to the biotechnology and pharmaceutical industries. Davis began working full-time at Covance on July 2, 2007. Covance hired Davis as the only Logistics Assistant II in its Indianapolis facility's Sample Accession group that also included six "Sample Coordinators" and one supervisor. Davis's position was a hybrid position comprised of both logistic and sample accession duties. Her logistics duties included archiving study samples, maintaining the specimen freezer and keeping stocks up to date.

Davis was the only Sample Accession group employee to perform logistics duties. Her sample accession duties included receiving, labeling, processing and shipping samples to ensure that they reached the correct projects and clients. Davis's unique position directly impacted the sample accession group's ability to accurately maintain records and, in turn, to provide service that met or exceeded customers' expectations.

Glenda Prysock supervised the Indianapolis facility's Sample Accession group throughout 2007. Prysock highlighted deficiencies in Davis's 2007 performance evaluation by stating that "in the sample accession area [Davis] still needs to slow down and take the time to make sure she is following all the steps of a process and that her work is cohesive and consistent." Prysock further stated that Davis "need[s] to continue to work on making sure she listens to all instructions she is given and takes the time to follow all the existing processes." Prysock said that Davis had "a tendency to want to forge ahead to new tasks or to take on more pieces of a process before she has mastered the beginning steps which sometimes leads to problems with work quality." Prysock also noted that Davis needed to watch the amount of work time she spent using the work computer for non-work related tasks, such as class work saying this may "cause her co-workers to have a negative perception of her contribution to the overall team goals." Davis did not complain or express concern about her 2007 evaluation.

In January 2008, James McNear replaced Prysock as the Sample Accession Supervisor. On January 14, Covance's Director/Vice President, Kevin Jones, e-mailed Davis and McNear after Jones learned that Davis improperly used a company credit card to purchase gas for her car. In February, the facility's Quality Assurance ("QA") group also notified McNear of some of Davis's errors. QA specifically noted that Davis listed incorrect client information on documents, creating a potential breach of client confidentiality. McNear also discovered errors with Davis's performance of her logistics duties in that Davis logged the wrong number of samples received by the facility, and she failed to split and store samples at the correct temperatures. Her improper maintenance of the specimen freezer led to frost buildup and a backlog of specimens. Samples that are received, labeled and/or processed incorrectly can negatively impact client studies and cause QA problems that may result in Corrective Action and Issue Resolution ("CAIR") reports (reports identifying an error and its resolution) and/or customer complaints. QA informed McNear that Covance received a CAIR in February as a result of samples that QA believed were incorrectly labeled and/or processed by Davis.

McNear consulted with Covance Human Resources Generalist Tami Donovan to determine the best way to address these and other performance deficiencies. Donovan approved McNear's suggestion to issue Davis a verbal warning, which he did on March 21, 2008. Davis did not object to the warning or its accuracy, nor did she complain that she thought the warning was issued to her because she is Asian.

Covance assigned Davis a "receiving" computer at her time of hire. She also later began using a second computer in addition to her receiving computer. For weeks in 2008, McNear told Davis she needed to stop occupying two computers because Sample

3

Accessions was getting a new employee. Davis told McNear, "when that person comes, then I move to the computer, my old computer." McNear informed Davis that her failure to "consolidate her computers by the end of the day 23 Apr 08 [ ] could result in escalating disciplinary actions, up to and including termination." Davis testified about receiving this warning as follows:

> Q: "Do you recall him telling you on April 21st that you were warned that if you do not consolidate your computers by the end of the day on April 23rd, it could result in escalating disciplinary actions including termination?"
>
> A: "Yes, but I don't understand why he is concerned about me using a computer if it's [sic] makes my job easier."

Davis did not consolidate her computers as instructed.

When Davis did not consolidate the computers after McNear's warning on April 21, 2008, McNear consulted with Donovan regarding the appropriate next steps for addressing Davis's on-going performance problems. McNear and Donovan decided to place Davis on a Performance Improvement Plan ("PIP"). McNear collaborated with Donovan when authoring the PIP. On April 25, 2008, McNear issued Davis a PIP. The PIP identified the History of Performance/Behavior Discussions, the Business Impact of Current Performance/Behavior, the specific Action Steps required, and the Measures/Timeframes for completion of the Action Steps. McNear discussed each point of the PIP with Davis, who asked no questions during the meeting and otherwise showed indifference about the seriousness of the PIP. McNear explained the company's expectations for improvement and the possible consequences of failing to meet the PIP's objectives. At no time did Davis complain that she thought she received the PIP because she is Asian.

During the thirty days of the PIP, McNear met with Davis multiple times to discuss her progress. At no time did Davis complain to McNear that he was asking her to do too much. At the end of the PIP, Covance concluded that Davis either completely failed to meet, or met untimely, half of the PIP's objectives. For example, Davis failed to complete all back-logged archiving within the required two weeks and, in fact, required an additional two weeks. Davis never organized her desk so other employees could find paperwork and other materials in her absence. Davis also failed to learn and retain passwords necessary for performing her duties. At no time during the thirty-day PIP period did Davis complain that she thought she was being discriminated against because she is Asian.

At the end of the thirty days, McNear met with Davis and informed her that she only met half her goals. McNear informed Donovan of the same, and they agreed that Davis's inability to show improvement necessitated her termination. On June 3, 2008, McNear, in the presence of Gary Grubb, the on-site Human Resources representative, terminated Davis's employment. McNear explained to Davis that, due to her inability to show improvement after multiple warnings and placement on the PIP, Covance was not going to be able to continue their partnership.

### C. Statutory Overview

Davis has presented no direct evidence of race discrimination in this case. Therefore, the court will consider only the indirect burden-shifting method of proof established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973). Under *McDonnell*, Davis must make a *prima facie* case of discrimination by showing that she (1) belongs to a protected class; (2) performed her job according to her employer's legitimate performance expectations; (3) suffered an adverse employment action; and (4) was treated less favorably compared to similarly situated employees outside of the protected class. *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 364-65 (7th Cir. 2009). If Davis establishes a *prima facie* case, then the burden shifts to the defendant to set forth a legitimate, nondiscriminatory reason for its employment decisions. *Id.* If the defendant makes such a showing, the burden shifts back to Davis to explain why the defendant's proffered justification was merely a pretext for discrimination. *Id.* at 365 (citing *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 859-60 (7th Cir.2008)).

### D. Analysis

Davis did not respond to the motion for summary judgment, so she has not made a *prima facie* case. The undisputed facts demonstrate that Davis belongs to a protected class and suffered an adverse employment action, but she did not perform her job to her employer's legitimate expectations. Performance issues were documented beginning in 2007. With her new supervisor, she failed to consolidate her computers even though she was warned of possible termination. When placed on a thirty day PIP, Davis failed to satisfy the company's expectations for improvement in several areas.

In addition, no similarly situated employee outside of Davis's protected class who was treated more favorably than Davis has been identified. Because Davis has not presented evidence sufficient to make a *prima facie* case, the court need not discuss the additional steps of the *McDonnal Douglas* analysis. Under these circumstances, no reasonable jury could find that Covance discriminated against Davis on the basis of race. Accordingly, Covance is entitled to summary judgment on Davis's claim of discrimination.

### III. Conclusion

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 305-06 (1st Cir. 1997) (internal quotation omitted). As the non-movant, Davis bears the burden of coming forward with specific facts from the record which show a genuine issue of material fact. *Morfin v. City of E. Chi.,* 349 F.3d 989, 997 (7th Cir. 2003). As explained herein, Davis has not come forward with evidence that establishes a *prima facie* case as to her claim. Accordingly, the defendant's motion for summary judgment (dkt 41) must be **granted.**

Judgment consistent with this Entry shall now issue. The costs of this action are assessed against the plaintiff.

The final pretrial conference and jury trial set for October 15, 2010, and November 15, 2010, respectively, are **vacated.**

**IT IS SO ORDERED.**


Date: 10/06/2010

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana